# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS V. RODRIGUEZ, | )   1:13cv00231 LJO DLB PC |
| | ) |
| Plaintiff, | )   **FINDINGS AND RECOMMENDATIONS** |
| | )   **FINDING COGNIZABLE CLAIMS AND** |
| | )   **DISMISSING REMAINING CLAIMS AND** |
| vs. | )   **DEFENDANTS** |
| | ) |
| HEFFLEFINGER, et al., | )   **THIRTY-DAY DEADLINE** |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff Luis V. Rodriguez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action.  Plaintiff filed this action on February 14, 2013.  On September 17, 2013, the Court screened Plaintiff's complaint and found certain claims cognizable.  The Court ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the cognizable claims.

On December 23, 2013, Plaintiff filed his First Amended Complaint ("FAC").  The Court screened the FAC on April 23, 2014, and again ordered Plaintiff to either file an amended complaint or notify the Court of his willingness to proceed only on the cognizable claims.  The Court also noted that if he chose to amend, it would be his final opportunity.

1

On July 14, 2014, Plaintiff filed his Second Amended Complaint ("SAC").  The SAC is a photocopy of his FAC, with some handwritten additions.[1]  He names Susan Hubbard, Matthew Cate, Biter, Lt. Speidell, Sgt. Williams, Sgt. Sheldon, Sgt. Jones, Sgt. Duncan, Correctional Officers Hefflefinger, Anderson, Smith, Badger, Huerta and McAllister, Appeals Coordinator DaVeiga and Tarnoff, Dr. Lovofoy, Nurse Tredwell[2] and Does 1 and 2 as Defendants.

## A.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

---

[1] Though the SAC is signed, Plaintiff neglected to amend the date of signature.

[2] Plaintiff indicates that the spelling is either Tredwell or Treadwell.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.**     **SUMMARY OF PLAINTIFF'S ALLEGATIONS**[3]

Plaintiff, a Native American inmate, is currently incarcerated at the California Substance Abuse Treatment Facility in Corcoran, California.  The events at issue occurred while Plaintiff was incarcerated at Kern Valley State Prison ("KVSP").

Plaintiff was confined to the Administrative Segregation Unit ("ASU") in KVSP from November 3, 2010, to February 24, 2012, on a "non-disciplinary" hold pending transfer.  He states that during this time, he was entitled to the same access to legal materials and courts as the general population.  He states that he was "subjected to malicious reprisals in response to 1st Amendment exercise."  ECF No. 25, at 9.

Prior to his placement in ASU, Plaintiff had at least two ongoing civil rights actions in federal court[4], and he continued to attempt to file administrative appeals.  Plaintiff was told by

---

[3] Apart from a few handwritten additions, Plaintiff's FAC is identical to his SAC.  The Court will underline the additions.

[4] Rodriguez v. Tilton, et al., 2:08-cv-1028 GEB AC and Rodriguez v. Schwarzenegger, et al., 2:07-cv-02531 ATG.

Defendants Anderson, McAllister, Chavez, Tredwell, Hefflefinger and Badger, "You file complaints, you got big problems coming." ECF No. 25, at 9.

Within a week of his ASU placement, Plaintiff began requesting law library access and photocopying services. From November 2010 through February 2011, Defendant Anderson allowed access on three occasions. Plaintiff states that Defendant Anderson told him that the ASU library did not have certain resources, which are routinely available to General Population inmates. He states that this is an "established CDCR policy/treatment of all ASU prisoners." ECF No. 25, at 10.

Plaintiff alleges that he was entitled to Priority Legal User ("PLU") status because he had a thirty-day deadline. Plaintiff further alleges that he asked Defendant Anderson for photocopying services so that he could copy his complaint and submit service documents in *Rodriguez v. Tilton, et al.* However, Defendant Anderson only copied half of the documents, causing delay and subsequent dismissal of various defendants from the action.

Plaintiff also began requesting that he be provided weekly access to his boxes of legal work, some of which was required for his ongoing federal litigation. Defendants Anderson and Chavez promised him weekly that he could have access, but from November 2010 through February 2011, he did not receive weekly access.

Plaintiff alleges that in response to his December 21, 2010, request for medical care for his established heart condition to Defendant Tredwell, he was subject to retaliatory reprisals by Defendants Tredwell, Badger and McAllister. When Plaintiff made the request, Defendants Badger, Anderson and McAllister were standing at his cell door. After the request, they ransacked Plaintiff's cell, threw all of his legal documents on the floor and took items. Defendant Tredwell falsified a disciplinary report accusing Plaintiff of staff manipulation.

On December 21, 2010, in response to his requests to access his legal files, Defendant Chavez deliberately attempted to mix-up his legal files with other inmates' files.

Plaintiff made several attempts to have his administrative appeals filed and processed by Defendant DaVeiga, but the complaints were rejected or disappeared.

In February 2011, Defendant Hefflefinger became the ASU Law Library Officer and immediately began refusing Plaintiff access to legal materials and his legal files. When Plaintiff filed appeals related to the issues, Defendant Hefflefinger told Plaintiff that he would "make it worse" for him. FAC 13. Defendant Hefflefinger also told Plaintiff that he would do everything possible to stop his lawsuits against staff.

Plaintiff continued to complain to Defendants Williams, Biter, Speidell and Denny about the threats, but Defendant Hefflefinger's threats only intensified.

Defendants Hefflefinger and Anderson continued to tell Plaintiff that they were reading his legal documents when Plaintiff submitted them for copying. Plaintiff contends that the responsibility of staffing the ASU Law Library was the responsibility of the Director of CDCR and Wardens Harrington and Biter. He alleges that they each knew "such 'gatekeeping' would create reprisals and chill inmate 1st Amendment rights." ECF No. 25, at 14.

On April 4, 2011, after Defendant Hefflefinger promised on numerous occasions to provide access, Plaintiff handed him a request for interview. He refused to provide Plaintiff with a copy of the receipt, which is required for further appeals. Plaintiff contends that this caused rejection of his appeals.

On April 19, 2011, Plaintiff gave Defendant Williams another request for interview and told him that Defendant Hefflefinger refused to give his the required receipt. Plaintiff alleges that Defendant Williams refused to intervene and also refused to give him the receipt.

Plaintiff alleges that Defendant Speidell refused to respond to his requests for interviews submitted for these "obstructions."

Defendant Hefflefinger continued to make verbal threats against Plaintiff, telling him that things would get worse.  Plaintiff pleaded with Defendant Williams to intervene, but he refused to do so.

On May 24, 2011, Defendant Hefflefinger falsified a disciplinary report against Plaintiff after illegally confiscating a portion of Plaintiff's legal files.  The report accused Plaintiff of using his legal files as weights for daily weightlifting.  Defendant Hefflefinger also accused Plaintiff of manipulating the medical process and requested that he be reevaluated by medical staff in light of his ability to weightlift.  Plaintiff alleges that Defendant Hefflefinger attempted to interfere with Plaintiff's ADA accommodations.  Plaintiff alleges that Defendant Smith, the ASU property officer, facilitated this by deliberately failing to document Plaintiff's storage files.

Plaintiff alleges that Defendant Hefflefinger gave supervisors and other officers false information in his May 25, 2011, chrono.  He contends he was not even in the cell at the time, and that his cellmate had tied up Plaintiff's legal files and was using them as weights.  This caused Plaintiff's cellmate to lock Plaintiff out of his cell and force a cell move.  Defendant Hefflefinger omitted any mention of Plaintiff's cellmate from the chrono.

Plaintiff alleges that this retaliatory charge was "endorsed" by Defendants Williams, Harris, Denny and Speidell and/or condoned "through deliberate nonfeasance in response" to Plaintiff's complaints.  ECF No. 25, at 17.

Plaintiff filed a request for interview with Litigation Coordinator Adams concerning Hefflefinger's claims that Adams was responsible for only allowing Plaintiff two hours of access per week to his confiscated legal files.  Adams stated that Defendant Hefflefinger never presented the issue to him, and that Plaintiff should be allowed PLU status.

On July 11, 2011, Defendant Lovofoy, in conspiracy with Defendant Hefflefinger and using Defendant Hefflefinger's May 24, 2011, chrono, told Plaintiff that Hefflefinger had a video of him lifting two hand-made weights.  Based on this report, and without an examination,

Defendant Lovofoy invalidated all of Plaintiff's ADA accommodations and medical chronos. Plaintiff told Defendant Lovofoy that Hefflefinger was lying and that no such video existed.

Defendant Lovofoy then falsified a medical report claiming that he had seen Plaintiff walking without any problem to support the retaliatory removal of his accommodations.

Plaintiff alleges that this subjected him to deliberate indifference to his serious medical needs.  As a result of losing his accommodations, Plaintiff was removed from the lower tier and fell down the stairs on January 1, 2012.  Plaintiff was transported to an outside hospital a few days later.  Plaintiff continued to be forced to climb stairs while he had mobility problems until leaving KVSP on January 22, 2012.

Plaintiff filed appeals about these incidents, but they were denied at each level by Defendants John and Jane Doe.

Defendant Hefflefinger and Defendant Jones began allowing Plaintiff access to his legal files, but they would not allow Plaintiff to remove any documents.

Plaintiff alleges that Defendants Hefflefinger, Williams, Sheldon, Jones, Speidell, Smith, Chavez, Denny, DaViega, Tarnoff, Biter, Hubbard and Does knew of the continuing violations and conspired to prevent Plaintiff from obtaining fair reviews through the administrative process.

Plaintiff alleges that these Defendants also allowed Hefflefinger to steal or destroy his legal documents, as well as evidence that was crucial to his litigation.  Plaintiff was denied his right to file a supplemental declaration in support of a motion for appointment of counsel. Plaintiff also alleges that he was denied his right to support his filings and prepare for his deposition in *Rodriguez v. Tilton.*

On numerous occasions between February 2011 and February 24, 2012, the supervisory Defendants knew that Hefflefinger, Jones, Williams, Speidell, Sheldon, Bell, Smith and Chavez took retaliatory actions against Plaintiff and his property.

On July 15, 2011, Defendant Hefflefinger utilized sadistic, malicious, excessive, unnecessary force on Plaintiff while he was walking to R&R to access his legal files.  Plaintiff was in waist chains, handcuffs and leg chains, and was not a threat.  Hefflefinger threatened to beat Plaintiff up, and told him that he was going to do whatever he could to stop Plaintiff's litigation.  Defendant Hefflefinger viciously grabbed Plaintiff by his arm, which Plaintiff needed to use his cane, and yanked his arm as high up as he could, while calling Plaintiff a "piece of shit dirty Indian" for suing officers.  This caused great pain to Plaintiff's shoulder, neck and back, and caused bruising on his arm.  Defendant Hefflefinger told Plaintiff that these actions were to physically punish Plaintiff for suing officials.  Plaintiff alleges that he was deliberately denied medical attention by Nurses John and Jane Does.

On December 15, 2011, Defendant Hefflefinger entered Plaintiff's cell and stole another stack of legal files.  Defendant Duncan assisted Hefflefinger.  Defendant Hefflefinger then falsified reports in an attempt to cover up his acts.

Plaintiff did not learn that his 1983 action was dismissed on October 5, 2011, until July 2012, when his wife checked the docket.  Plaintiff had given a document related to the case to Defendant Hefflefinger for mailing on November 28, 2011.  The document was never received by the Court within the 30-day deadline.  Plaintiff believes that Defendant Hefflefinger read, destroyed or kept Plaintiff's documents to prevent filing with the Court.

Plaintiff alleges that CDCR has a policy of unified retaliation against serious litigators to punish or chill such actions.  He alleges that Hubbard, Biter, Harrington and Denny "created a policy/practice and established a system of known "gate-keeping" by refusing to assign a Law Librarian or other non-officer as the ASU Law Library operator.  Plaintiff contends that this denied meaningful law library resources/access.

On January 22, 2012, Defendant Hefflefinger caused Defendant Huerta to file a false disciplinary report, with the signature of Sheldon and Speidell, in an attempt to thwart Plaintiff's pending transfer out of KVSP and to instill fear.

Plaintiff alleges that because of the actions of Defendants Smith, Hefflefinger and Jones in denying Plaintiff access to his legal files, Plaintiff was prevented from re-filing a 1983 action for deliberate indifference to a serious medical need, part of which was initially filed in Rodriguez v. Hubbard, 1:10-cv-00858 DLB PC.  They also prevented Plaintiff from pursuing state habeas petitions.

Plaintiff alleges that Defendants McAllister and Badger, as part of retaliatory punishments, refused to allow Plaintiff any outdoor exercise between November 3, 2010, and December 28, 2010.

Defendant Huerta, in retaliation for Plaintiff's complaints, and as instructed by Defendants Hefflefinger, Sheldon and Speidell, continued to refuse Plaintiff outdoor exercise between September 2011 and January 2012.  Defendant Huerta also falsified a disciplinary report accusing Plaintiff of obstructing a peace officer, with the intent to prevent Plaintiff's transfer and keep him from Custody Level III reduction.

The legal files confiscated by Defendant Hefflefinger have not been returned.

Based on these allegations, Plaintiff alleges (1) violation of the First Amendment by Defendants Hefflefinger, Speidell, Sheldon, Tarnoff, Anderson, Jones, Williams, McAllister, Cate, Hubbard, Huerta, Biter, Smith, Badger, DaVeiga, Tredwell, Duncan and Lovofoy; (2) violation of the Eighth Amendment by Defendants Hefflefinger, Cate, Hubbard, Huerta, Biter, Speidell, Williams, Sheldon, Jones, Anderson, Smith, Badger, McAllister, DaVeiga, Lovofoy, Tredwell and Duncan; and (3) violation of the Fourteenth Amendment by all Defendants.

**C.**   **ANALYSIS**

    1.   Defendant Tarnoff

In his SAC, Plaintiff adds Defendant Tarnoff to his causes of action.  However, he has not stated any factual allegations against Defendant Tarnoff, and he fails to state a claim against him.

    2.   Defendants Cate, Biter and Hubbard

Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010).  As supervisory personnel, Defendants Cate and Biter may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).  Some culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy may support a claim, the policy must have been the moving force behind the violation.  Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

Plaintiff alleges that Defendants Cate and Biter were responsible for staffing the ASU Law Library.  He also alleges that Defendant Biter allowed things to happen and supported a policy of "gate-keeping."  Plaintiff now adds that Defendants knew that the policy would create reprisals and chill First Amendment rights.  His allegations are still too vague, however, to

support a finding of supervisory liability.  Accordingly, Plaintiff fails to state a claim against Defendants Cate, Biter and Hubbard.

      3.    <u>First Amendment Right to File Prison Grievances</u>

Plaintiff has a right under the First Amendment to file grievances complaining about prison official misconduct.  <u>See</u> <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009); <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir.2005).  However, Plaintiff has not made any allegations that he was actually prevented from filing grievances.  To the contrary, Plaintiff was able to file numerous complaints against various staff members.

Plaintiff alleges that Defendants Hefflefinger and Williams refused to give him a signed receipt and that Defendants Williams and Speidell refused to respond to a grievance.  He also alleges that he filed appeals with Defendant DaVeiga, but they were either rejected or disappeared.  The Court is unable to find any precedent that suggests that prison officials are required under the Constitution to provide responses to valid grievances, or that the First Amendment requires grievances to be processed in a certain way.  In fact, Plaintiff does not have a constitutional entitlement to a specific prison grievance procedure.  <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir.2003) (citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir.1988)).

Therefore, Plaintiff fails to state a claim against any Defendant for violation of the First Amendment based on his right to file grievances.  Plaintiff has not corrected this deficiency in his SAC.

      4.    <u>First Amendment Right to Free Speech</u>

An inmate retains First Amendment free speech rights not inconsistent with his status as a prisoner and with the legitimate penological objectives of the corrections system.  <u>See</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 231 (2001); <u>Clement v. California Dep't of Corr.</u>, 364 F.3d 1148, 1151 (9th Cir. 2004).

In his complaint, however, Plaintiff does not identify any speech that was prohibited. Although he alleges that his grievances were not properly handled, this issue was dealt with above.  Insofar as Plaintiff's allegations deal with access to the courts, they will be analyzed accordingly.  Plaintiff has not corrected this deficiency in his SAC.

5.      First Amendment Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff's retaliation claims are based on his belief that he is being retaliated against because of his legal actions and prisoner complaints involving Defendants.  He alleges Defendant Anderson delayed making legal copies and refused access to Plaintiff's legal materials.  He also alleges that Defendant Hefflefinger refused law library access.  Plaintiff contends that Defendants Badger, McAllister and Anderson ransacked Plaintiff's cell and took legal documents.  He contends that Defendants Hefflefinger, Lovofoy and Tredwell filed false reports, including false medical reports, and that Defendants Sheldon and Speidell signed false reports.  Plaintiff alleges that Defendants Hefflefinger and Duncan stole his legal files.  He contends that Defendants Badger, McAllister, Hefflefinger, Sheldon and Speidell refused outdoor exercise.  Plaintiff alleges that Defendant Hefflefinger used excessive force against him

on July 15, 2011.  Finally, Plaintiff alleges that Defendant Huerta denied outdoor exercise and filed false reports against him.  Viewed liberally, the Court finds that these allegations are sufficient to state a claim for retaliation in violation of the First Amendment against Defendants Anderson, Tredwell, Hefflefinger, Badger, Lovofoy, McAllister, Duncan, Sheldon, Speidell and Huerta.[5]

Insofar as Plaintiff contends that Defendants Smith, Speidell, Sheldon, Jones, Williams, "allowed" Defendant Hefflefinger to steal his legal files and/or refused to intervene, his allegations are too vague to state a claim.  Similarly, Plaintiff's claims that Defendant Speidell and Williams endorsed and/or condoned Defendant Hefflefinger's false report(s), his allegations are too vague to state a claim.  Plaintiff's SAC does not correct this deficiency.

Insofar as Plaintiff alleges that Defendants Hefflefinger and Jones allowed Plaintiff access to his legal documents, but would not allow him to remove documents, the Court finds that this is not a sufficient adverse action to support a retaliation claim.  Plaintiff's SAC does not cure this deficiency.

6.      First Amendment Access to Courts

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996); Silva v. DiVittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).  However, to state a viable claim for relief, Plaintiff must show that he suffered an actual injury, which requires "actual prejudice to contemplated or existing litigation."  Nevada Dep't of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis, 518 U.S. at 348) (internal quotation marks omitted), cert. denied, 132 S.Ct. 1823 (2012); Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002); Lewis, 518 U.S. at 351; Phillips, 588 F.3d at 655.

---

[5] Plaintiff will be instructed on service after adoption of these Findings and Recommendations.

Plaintiff alleges that Defendants Smith, Hefflefinger and Jones denied him access to his legal files, which prevented him from filing a 1983 action and state habeas petitions. He further alleges that Defendant Anderson's delays in copying materials resulted in the dismissal of defendants in one of his actions. Again, however, Plaintiff's claims are too vague to state a claim. Plaintiff has not corrected this deficiency in the SAC.

As to Defendant Hefflefinger, Plaintiff alleges that he repeatedly refused Plaintiff access to the law library and his legal files, and did not allow Plaintiff to remove documents from his legal files once access was provided. Plaintiff alleges that as a result, he was denied the right to file a supplemental declaration in one action, as well as the right to prepare for his deposition. These impacts, however, do not show a denial of access to the Courts.

Finally, Plaintiff alleges that Defendant Hefflefinger failed to mail a legal document that Plaintiff gave him on November 28, 2011. However, Plaintiff alleges that his action had been dismissed on October 5, 2011. Plaintiff now adds that the document wasn't received by the Court within the thirty-day deadline, but this does not change the fact that Plaintiff's case had already been dismissed when he gave the document to Defendant Hefflefinger to mail.

To the extent that Plaintiff seeks to raise an access to the courts claim by arguing that, as a general "policy," the ASU law library has less resources than the General Population law library, or that Defendants failed to assign a legal librarian to the ASU library, he cannot do so. Inmates do not have the right to a law library or legal assistance. Lewis, 518 U.S. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id.

Accordingly, Plaintiff fails to state an access to the courts claim against any Defendant. He has not corrected these deficiencies in his SAC.

7.      Deprivation of Property Without Due Process

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects Plaintiff from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and Plaintiff has a protected interest in his personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  Authorized, intentional deprivations of property are actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), but the Due Process Clause is violated only when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural protections," Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing Vance v. Barrett, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations omitted), cert. denied, 132 S.Ct. 1823 (2012).

While Plaintiff alleges that his personal property was confiscated, he fails to allege any facts supporting a claim that he was denied the procedural process he was due.  The fact that Plaintiff's personal property was confiscated and has yet to be returned, alone, is not sufficient to support a plausible due process claim.  Greene, 648 F.3d at 1019.

Moreover, to the extent that Plaintiff argues that his property was stolen by unauthorized means, the Due Process Clause is not violated by the random, unauthorized deprivation of property so long as the state provides an adequate post-deprivation remedy.  Hudson v. Palmer, 468 U.S. 517, 533 (1984); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).  Plaintiff has an adequate post-deprivation remedy under California law and therefore, he may not pursue a due process claim arising out of the unlawful confiscation of his personal property.  Barnett, 31 F.3d at 816-17 (citing Cal. Gov't Code §§810-895).

Accordingly, Plaintiff fails to state a deprivation of due process claim.  He has failed to correct this deficiency in the SAC.

8.    Racial Discrimination

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class.  Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

Here, although Plaintiff adds an allegation that he is a Native American inmate and cites racial discrimination in his causes of action, he includes no factual support for such a claim.  Accordingly, Plaintiff fails to state a claim under the Fourteenth Amendment.

9.    Eighth Amendment Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations omitted).  For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013).  The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 130

S.Ct. at 1178 (citing *Hudson*, 503 U.S. at 9-10) (quotation marks omitted); <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002).

Here, Plaintiff alleges that on July 15, 2011, Defendant Hefflefinger used excessive force him while escorting him to his legal files. In his FAC, Plaintiff stated that Defendant Hefflefinger "viciously grabbed [him] by his arm with which [he] needed to use to walk with his cane, and with extreme force, yanked [his] arm from the elbow-bicep area, violently with great force jerking [his] arm as high up as he could. . ." He alleged that this caused his shoulder "to feel great pains as well as [his] neck and back, and causing bruising on [his] arm." FAC 21.

The Court found that this did not rise to the level necessary to state a constitutional claim. Instead, Defendant Hefflefinger used de minimis force that was not "of a sort repugnant to the conscience of mankind." <u>Wilkins</u>, 130 S.Ct. at 1178.

Now, Plaintiff amends his allegations and contends that while he was walking to R&R to access his files, Defendant Hefflefinger utilized sadistic, malicious, excessive, unnecessary force on Plaintiff. However, despite these legal conclusions, his factual allegations remain the same. He contends that Defendant viciously grabbed him by his arm and yanked it as high up as it could go. This does not rise to the level of force necessary.

Plaintiff also adds allegations that Defendant Hefflefinger threatened to beat him up and called him a "piece of shit dirty Indian." However, mere verbal harassment or abuse, including the use of racial epithets, does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987).

Accordingly, Plaintiff fails to state a claim against Defendant Hefflefinger for excessive force in violation of the Eighth Amendment. Plaintiff's SAC had not cured this deficiency.

10.    <u>Eighth Amendment Deliberate Indifference</u>

For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in

further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Plaintiff contends Defendant Lovofoy invalidated Plaintiff's ADA accommodations without a medical examination. The Court finds that, viewed liberally, this states an Eighth Amendment medical claim against Defendant Lovofoy.

Insofar as Plaintiff contends that John and Jane Doe refused treatment after he was allegedly assaulted by Defendant Hefflefinger, his allegation is too vague to state a claim. He has not corrected this deficiency in his SAC.

11.   Eighth Amendment Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d

18

at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002); Rhodes, 452 U.S. at 346.

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff alleges that on May 24, 2011, Defendant Hefflefinger filed a false disciplinary report in which he questioned Plaintiff's disability accommodations. Defendant Hefflefinger requested that Plaintiff be reevaluated by medical staff to "address his ability to perform daily 'weight-lifting' while under so many precautions." As a result, Plaintiff contends that on July 11, 2011, Defendant Lovofoy, without performing an examination, falsified a medical report that invalidated all of Plaintiff's ADA/medical chronos. Plaintiff was removed from his lower tier cell and placed in an upper tier cell, where he was forced to climb stairs despite his complaints of pain. On January 1, 2012, while Plaintiff was handcuffed, he fell while climbing stairs.

The Court finds that Plaintiff states an Eighth Amendment conditions of confinement claim against Defendants Hefflefinger and Lovofoy.

Plaintiff also alleges that Defendant Huerta denied outdoor exercise on "numerous occasions" from September 2011 through January 2012. ECF No. 25, at 25. Inmates have a constitutional right to outdoor exercise under the Eighth Amendment. Thomas, 611 F.3d at 1151-52. However, Plaintiff's allegations are not sufficient to satisfy either the objective

component or the subjective component of an Eighth Amendment claim.  Id. at 1150-51.

Plaintiff's allegation that he was denied exercise on numerous occasions during a five-month

period is not an extreme deprivation.  Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal

quotation marks and citations omitted).  Plaintiff therefore fails to state an Eighth Amendment

claim against Defendant Huerta.

**D.      FINDINGS AND RECOMMENDATIONS**

Based on the above, the Court RECOMMENDS that this action go forward on the

following cognizable claims: (1) retaliation in violation of the First Amendment against

Defendants Anderson, Hefflefinger, Badger, McAllister, Tredwell, Sheldon, Speidell, Duncan,

Lovofoy and Huerta; (2) violation of the Eighth Amendment against Defendant Lovofoy; and (3)

violation of the Eighth Amendment against Defendants Hefflefinger and Lovofoy based on

conditions of confinement.

Plaintiff has been provided with two opportunities to amend.  In the prior screening order,

the Court stated that his SAC would be his final opportunity.  Accordingly, the Court

RECOMMENDS that all other claims, and Defendants Hubbard, Cate, Biter, Williams, Smith,

DaViega and Tarnoff be DISMISSED for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District

Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

thirty (30) days after being served with these Findings and Recommendations, the parties may

file written objections with the Court.  The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be filed

within fourteen (14) days of service of the objections.  The parties are advised that failure to file

///

///

///

///

objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v.</u>
<u>Wheeler</u>, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014)
(citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 30, 2015**                          /s/ *Dennis L. Beck*

                                                    UNITED STATES MAGISTRATE JUDGE

21