# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS RODRIGUEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>HEFFLEFINGER, et al.,<br><br>          Defendants. | Case No. 1:13-cv-00231 DAD DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>(Document 55)<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Luis Rodriguez ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's July 14, 2014, Second Amended Complaint on the following claims:(1) retaliation in violation of the First Amendment against Defendants Anderson, Hefflefinger, Badger, McAllister, Tredwell, Sheldon, Speidell, Duncan, Lozovoy[1] and Huerta; (2) violation of the Eighth Amendment against Defendant Lozovoy; and (3) violation of the Eighth Amendment against Defendants Hefflefinger and Lozovoy based on conditions of confinement.

Defendants Speidell, Badger, Sheldon, Tredwell, Huerta and Anderson filed the instant motion for summary judgment for failure to exhaust on November 16, 2015.[2] Defendant McAllister joined in the motion on November 16, 2015. Plaintiff received an extension of time to file an

---

[1] Plaintiff spells the name as "Lozovoy," though it appears that "Lozovoy" is the correct spelling.

[2] Defendants' motion included the required notice to Plaintiff explaining the procedure for opposing summary judgment.

1

opposition on December 15, 2015, but he has not opposed the motion. The motion is ready for decision pursuant to Local Rule 230(l).

**A.    ALLEGATIONS IN FIRST AMENDED COMPLAINT**

Plaintiff is currently incarcerated at the R.J. Donovan Correctional Facility. The events at issue occurred while Plaintiff was incarcerated at Kern Valley State Prison ("KVSP").

Plaintiff was confined to the Administrative Segregation Unit ("ASU") in KVSP from November 3, 2010, to February 24, 2012, on a "non-disciplinary" hold pending transfer. He states that during this time, he was entitled to the same access to legal materials and courts as the general population. He states that he was "subjected to malicious reprisals in response to 1st Amendment exercise." ECF No. 25, at 9.

Prior to his placement in ASU, Plaintiff had at least two ongoing civil rights actions in federal court, and he continued to attempt to file administrative appeals. Plaintiff was told by Defendants Anderson, McAllister, Tredwell, Hefflefinger and Badger, "You file complaints, you got big problems coming." ECF No. 25, at 9.

Plaintiff alleges that he was entitled to Priority Legal User ("PLU") status because he had a thirty-day deadline. Plaintiff further alleges that he asked Defendant Anderson for photocopying services so that he could copy his complaint and submit service documents in Rodriguez v. Tilton, et al. However, Defendant Anderson only copied half of the documents, causing delay and subsequent dismissal of various defendants from the action.

Plaintiff also began requesting that he be provided weekly access to his boxes of legal work, some of which was required for his ongoing federal litigation. Defendant Anderson promised him weekly that he could have access, but from November 2010 through February 2011, he did not receive weekly access.

Plaintiff alleges that in response to his December 21, 2010, request for medical care for his established heart condition to Defendant Tredwell, he was subject to retaliatory reprisals by Defendants Tredwell, Badger and McAllister. When Plaintiff made the request, Defendants Badger, Anderson and McAllister were standing at his cell door. After the request, they ransacked Plaintiff's

///

cell, threw all of his legal documents on the floor and took items. Defendant Tredwell falsified a disciplinary report accusing Plaintiff of staff manipulation.

In February 2011, Defendant Hefflefinger became the ASU Law Library Officer and immediately began refusing Plaintiff access to legal materials and his legal files. When Plaintiff filed appeals related to the issues, Defendant Hefflefinger told Plaintiff that he would "make it worse" for him. ECF No. 25, at 13. Defendant Hefflefinger also told Plaintiff that he would do everything possible to stop his lawsuits against staff.

On May 24, 2011, Defendant Hefflefinger falsified a disciplinary report against Plaintiff after illegally confiscating a portion of Plaintiff's legal files. The report accused Plaintiff of using his legal files as weights for daily weightlifting. Defendant Hefflefinger also accused Plaintiff of manipulating the medical process and requested that he be re-evaluated by medical staff in light of his ability to weightlift. Plaintiff alleges that Defendant Hefflefinger attempted to interfere with Plaintiff's ADA accommodations.

Plaintiff alleges that Defendant Hefflefinger gave supervisors and officers false information in his May 25, 2011, chrono. Plaintiff contends he was not even in the cell at the time, and that his cellmate had tied up Plaintiff's legal files and was using them as weights. This caused Plaintiff's cellmate to lock Plaintiff out of his cell and force a cell move. Defendant Hefflefinger omitted any mention of Plaintiff's cellmate from the chrono.

On July 11, 2011, Defendant Lozovoy told Plaintiff that Defendant Hefflefinger had a video of him lifting two hand-made weights. Based on this report, and without an examination, Defendant Lozovoy invalidated all of Plaintiff's ADA accommodations and medical chronos. Plaintiff told Defendant Lozovoy that Defendant Hefflefinger was lying and that no such video existed.

Defendant Lozovoy then falsified a medical report claiming that he had seen Plaintiff walking without any problem to support the retaliatory removal of his accommodations.

Plaintiff alleges that this subjected him to deliberate indifference to his serious medical needs. As a result of losing his accommodations, Plaintiff was removed from the lower tier and fell down the stairs on January 1, 2012. Plaintiff was transported to an outside hospital a few days later.
///

Plaintiff continued to be forced to climb stairs while he had mobility problems until leaving KVSP on January 22, 2012.

On July 15, 2011, Plaintiff was walking to R&R to access his legal files. Plaintiff was in waist chains, handcuffs and leg chains, and was not a threat. Defendant Hefflefinger threatened to beat Plaintiff up, and told him that he was going to do whatever he could to stop Plaintiff's litigation. Defendant Hefflefinger viciously grabbed Plaintiff by his arm, which Plaintiff needed to use his cane, and yanked his arm as high up as he could, while calling Plaintiff a "piece of shit dirty Indian" for suing officers. This caused great pain to Plaintiff's shoulder, neck and back, and caused bruising on his arm. Defendant Hefflefinger told Plaintiff that these actions were to physically punish Plaintiff for suing officials.

On December 15, 2011, Defendant Hefflefinger entered Plaintiff's cell and stole another stack of legal files. Defendant Duncan assisted Hefflefinger. Defendant Hefflefinger then falsified reports in an attempt to cover up his acts.

On January 22, 2012, Defendant Hefflefinger caused Defendant Huerta to file a false disciplinary report, with the signature of Sheldon and Speidell, in an attempt to thwart Plaintiff's pending transfer out of KVSP and instill fear.

Plaintiff alleges that Defendants McAllister and Badger, as part of retaliatory punishments, refused to allow Plaintiff any outdoor exercise between November 3, 2010, and December 28, 2010.

Defendant Huerta, in retaliation for Plaintiff's complaints, and as instructed by Defendants Hefflefinger, Sheldon and Speidell, continued to refuse Plaintiff outdoor exercise between September 2011 and January 2012. Defendant Huerta also falsified a disciplinary report accusing Plaintiff of obstructing a peace officer, with the intent to prevent Plaintiff's transfer and keep him from Custody Level III reduction.

**B.    LEGAL STANDARD**

The failure to exhaust is subject to a motion for summary judgment in which the court may look beyond the pleadings. Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014). If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Albino, 747 F.3d at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

**C.      UNDISPUTED FACTS**

Between November 3, 2010, and February 24, 2012, Plaintiff was incarcerated at KVSP. ECF No. 25.

From November 3, 2010, through February 14, 2013, the date Plaintiff filed this action, Plaintiff submitted eight custody appeals originating from KVSP that were accepted and adjudicated at the Third Level of Review.  Voong Decl. ¶ 8, Ex. 2-9.  Of these appeals, only two involved any claims and/or Defendants involved in this action.  Voong Decl. ¶¶ 9-12, Exs. 2-9.

In appeal log number KVSP-11-00920, submitted on April 19, 2011, Plaintiff alleged that Defendant Hefflefinger refused to make copies of his legal paperwork.  Voong Decl. ¶ 9, Ex. 7.

In appeal log number KVSP-12-00063, submitted on December 29, 2011, Plaintiff alleged that Defendants Hefflefinger and Duncan removed fifty pounds of legal paperwork from his cell. Plaintiff further alleged that Defendant Hefflefinger falsified documents and evidence in retaliation for Plaintiff's lawsuits against CDCR and its staff.  Voong Decl. ¶ 9, Ex. 9.

Plaintiff named Defendant Sheldon in KVSP-12-00063, after Defendant Sheldon denied the appeal at the First Level of Review.  Tallerico Decl. ¶ 12, Ex. 9.

Appeals KVSP-11-00920 and KVSP-12-00063 did not address Plaintiff's allegations against Defendants Speidell, Huerta, Badger, Anderson, Tredwell, Sheldon or McAllister. Voong Decl. ¶ 9, Ex. 7 and 9; Tallerico Decl. ¶¶ 10-4, Ex. 7 and 10.

During the relevant period, Plaintiff also submitted six[3] healthcare reviews originating from KVSP that were accepted and adjudicated at the Third Level of Review. Robinson Decl. ¶¶ 8-9, Ex. 2-5. Of these appeals, only three involved claims and Defendants in this action. Robinson Decl. ¶¶ 9-11.

In appeal log number KVSP-HC-11032194, filed on September 14, 2011, Plaintiff alleged that Defendant Lozovoy was deliberately indifferent to his serious medical needs. The medical issues arose from a spinal injury on September 8, 2011. Robinson Decl. ¶ 9, Ex. 4.

In appeal log number KVSP-HC-11031984, filed on June 15, 2011, Plaintiff alleged that Defendant Lozovoy invalidated his mobility status based on a May 24, 2011, CDCR 128 Chrono authored by Defendant Hefflefinger. Robinson Decl. ¶ 9, Ex. 5.

In appeal log number KVSP-HC-11032433, filed on November 22, 2011, Plaintiff alleges that Defendant Lozovoy falsified medical records and denied him medical care for chronic illnesses. Robinson Decl. ¶ 9, Ex. 7.

These health care appeals did not address Plaintiff's allegations against Defendants Speidell, Huerta, Sheldon, Tredwell, Badger, Anderson or McAllister. Robinson Decl. ¶ 9, Ex. 4, 5 and 7.

**D.      DISCUSSION**

     1.      Appeals Process

California law affords prisoners the right to appeal administratively any departmental decision, action, condition, or policy which they can demonstrate have an adverse effect upon their health, safety, or welfare. Cal.Code Regs. tit. 15, § 3084.1(a). Since the revision of applicable regulations effective January 28, 2011, CDCR's appeal process consists of three levels of appeal: (1) a first level appeal filed with one of the institution's appeals coordinators unless exempted; (2) a second level appeal filed with the institution head or designee; and (3) a third level appeal filed with

---

[3] Defendants indicate that only four appeals were filed in the Points and Authorities and Statement of Undisputed Facts. However, Mr. Robinson's actual declaration states that six appeals were filed, and he lists those six appeals. Robinson Decl. ¶ 8. The discrepancy does not impact the outcome of this motion. Defendants' citation to the exhibits attached to Mr. Robinson's declaration also seems to be incorrect, though the Court was able to easily locate the cited documents.

the CDCR Appeals Chief. Cal.Code Regs. tit. 15, §§ 3084.7, 3084.8. The inmate must submit the first level appeal within 30 days of the occurrence of the event being appealed or of first having knowledge of the action or decision being appealed. Cal.Code Regs. tit. 15, § 3084.8(b). A prisoner exhausts the appeal process when he completes the third level of review. Cal.Code Regs. tit. 15, § 3084.1(b); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010). A "cancellation or rejection" of an appeal "does not exhaust administrative remedies." Cal.Code Regs. tit. 15, § 3084.1(b).

2. Analysis

Defendants concede that Plaintiff exhausted his claims against Defendants Hefflefinger and Lozovoy. Though Defendants indicate that Plaintiff has exhausted *all* claims against Defendant Hefflefinger and Lozovoy, the Court notes that Plaintiff did not exhaust his retaliation claims against Defendant Hefflefinger concerning the alleged use of excessive force on July 15, 2011, and the denial of outdoor exercise.

As to Defendants Speidell, Huerta, Sheldon, Tredwell, Badger, Anderson or McAllister, it is undisputed that Plaintiff has not filed any appeals setting forth the allegations of retaliation included in the Second Amended Complaint. Rather, as Defendants point out, all of Plaintiff's appeals focused on the allegations against Hefflefinger and Lozovoy.

Turning to Defendant Duncan, Defendants appear to suggest that although Plaintiff identified him in appeal KVSP-12-00063, as an officer who took legal paperwork from his cell with Defendant Hefflefinger, it does not exhaust Plaintiff's retaliation claim against Defendant Duncan.[4] Defendants contend that the appeal identified Defendant Duncan only "as an officer that assisted Defendant Hefflefinger" on the basis of Defendant Hefflefinger's alleged scheme to retaliate against him. ECF No. 55-1, at 5.

The Court disagrees. Plaintiff's description of the event was sufficient to put the prison on notice of the claims so as to fulfil the basic purposes of exhaustion. Reyes v. Smith, 810 F.3d 654, (9th Cir. 2016); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

---

[4] Defendant Duncan is not identified as one of the Defendants bringing this motion, though Defendants do not concede that any claims against him are unexhausted. Based on this argument relating to Defendant Duncan, the Court assumes that Defendants do not believe that Plaintiff has exhausted his claims against Defendant Duncan. If the Court is incorrect, Defendant Duncan may raise the issue in his objections.

1      Therefore, Defendants have carried their burden of demonstrating that Plaintiff failed to exhaust all claims against Defendants Speidell, Huerta, Sheldon, Tredwell, Badger, Anderson or McAllister, and certain claims against Defendant Hefflefinger.  The burden now shifts to Plaintiff to provide evidence showing that his available administrative remedies were effectively unavailable.

Plaintiff has failed to oppose this motion, despite receiving notice of the requirements for opposing summary judgment and an extension of time from the Court.  He has therefore failed to carry his burden.

## E.     RECOMMENDATION

The Court therefore RECOMMENDS that Defendants' motion for summary judgment be GRANTED IN PART, and all claims except (1) Plaintiff's retaliation claim against Defendants Hefflefinger (for refusing to make legal copies, removing paperwork from Plaintiff's cell, and falsifying documents and evidence), Lozovoy (for falsifying medical reports) and Duncan (for removing paperwork from Plaintiff's cell); (2) Plaintiff's deliberate indifference claim against Lozovoy; and (3) Plaintiff's conditions of confinement claim against Defendants Hefflefinger and Lozovoy, be DISMISSED WITHOUT PREJUDICE for failure to exhaust.  The Court further RECOMMENDS that Defendants Speidell, Huerta, Sheldon, Tredwell, Badger, Anderson and McAllister be dismissed from this action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned

///
///
///
///
///
///
///

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

   Dated:   **March 5, 2016**                    /s/ *Dennis L. Beck*
                                                             UNITED STATES MAGISTRATE JUDGE